Kevin M. **BALLANCE**, Plaintiff,

v.

**S.K. YOUNG** and **J. Fortner**, Defendants.

Civil Action No. 7:99–CV–00746.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 12, 2000.

Kevin M. Ballance Big Stone Gap, VA, pro se.

Pamela Anne Sargent, Office of the Attorney General, Richmond, VA, for defendants.

## MEMORANDUM OPINION

TURK, District Judge.

KEVIN M. BALLANCE, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff ("Ballance") alleges that S.K. Young ("Young"), the Warden of Wallens Ridge State Prison ("WRSP"), violated his constitutional rights by wrongfully confiscating three (3) scrapbooks from his cell. Ballance further alleges that J. Fortner violated his constitutional rights by confiscating a letter that Ballance wrote to his lawyer. As relief, Ballance seeks an injunction directing that he receive his three scrapbooks and his personal mail and that he be awarded $154.95 for legal fees and $250,000 in punitive damages. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the matter comes before this Court on the Defendants' Motion for Summary Judgment and the Plaintiff's Motion for Summary Judgment. For the reasons stated below, the Defendants' Motion for Summary Judgment is Granted and the Plaintiff's Motion for Summary Judgment is denied. Insofar as Ballance introduces a new and distinct retaliation claim under § 1983, pursuant to 28 U.S.C. § 1915A, this Court also dismisses Ballance's Motion to Compel.

## I. FACTUAL BACKGROUND

Kevin M. Ballance, the plaintiff, is an inmate under the supervision of the Virginia Department of Corrections ("VDOC") and currently housed at Wallens Ridge State Prison. S.K. Young is the Warden of WRSP, and J. Fortner is an officer at WRSP.

On or about June 4, 1999, during the prison's initial inventory of Ballance's belongings, prison officials confiscated a number of unauthorized personal property, including twenty-five excess magazines, one fan, assorted clippings, and three scrap books. WRSP informed Ballance on June 10, 1999, that the confiscated items were unauthorized. Ballance acknowledged the confiscation by signing an inmate special status inventory form. That same day, Ballance signed a property disposition form designating that WRSP send his items to his "Mom" via United Parcel Service.

On June 18, 1999, Ballance filed an inmate grievance form, alleging that neither Division Operating Procedure ("DOP") 856 nor DOP 851 empowers the prison to confiscate his scrapbooks and clippings. In response to Ballance's complaint, a prison official filed an inmate grievance procedure investigative report on June 29, 1999, which determined the grievance unfounded, as DOP 856 does not allow clippings or empower the inmate to deem what constitutes a "book." Warden Young filed a Level I grievance form advising Ballance that DOP 856 does not allow scrapbooks at WRSP. Moreover, Warden Young explained that "copies or sections of publications, brochures, newsletters, materials printed off the Internet or other printed materials to be received in personal correspondence ... are not authorized for receipt with personal correspondence." Ballance appealed the Level I review to Regional Director Young.

The Regional Director affirmed the Level I decision and determined Ballance's grievance unfounded. Level II was Ballance's last level of appeal for his grievance.

Ballance also alleges that J. Fortner violated his constitutional rights by confiscating a letter sent to his attorney. On September 8, 1999, Fortner delivered a letter from an attorney to Ballance's cell. Ballance opened the envelope, which allegedly contained a letter, two money-orders and a small envelope with hairs in them. Fortner confiscated the contents of the letter and filed a Major Offense Report on September 9, 1999, which Ballance signed at 6:05 p.m. The report indicated that J. Fortner discovered that Ballance sent hair samples to his attorney through the mail.

On September 13, 1999, the prison conducted a disciplinary hearing regarding Fortner's accusation that Ballance sent hair to his attorney in the mail. The Hearings Officer, J. Salyer, found Ballance guilty of the charge. Mr. Salyer based his decision on the fact that Ballance admitted to sending hair samples to his attorney through the mail. Accordingly, Ballance lost thirty (30) days of television privileges beginning September 13 through October 12, 1999. An institutional review, conducted on September 15, 1999, approved the hearing and penalty.

## II. ANALYSIS

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Instead, the non-moving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed.R.Civ.P. 56(e). If the non-moving party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the non-moving party.

The Plaintiff asserts that S.K. Young and J. Fortner violated his constitutional rights, specifically the First, Fourth and Fourteenth Amendments, by confiscating three scrapbooks, clippings and the letter. Ballance asserts that under the First Amendment, he has a right to own and view the scrapbooks and assorted clippings and that he has the right to receive mail. Under the Fourth Amendment, the Plaintiff argues that S.K. Young unlawfully searched Ballance's property and confiscated the scrapbooks and clippings. Ballance further avers that J. Fortner violated Ballance's Fourth Amendment rights by seizing the letter that contained hair and two money orders. Specifically, Ballance alleges that J. Fortner violated his right to due process under the Fourteenth Amendment when Fortner confiscated the letter's contents.

Ballance raises two distinct claims in his complaint: 1) Unconstitutional confiscation of his scrapbook and clippings, and 2) Unconstitutional confiscation of an envelope from his lawyer, which contained hair samples and, allegedly, two money orders. Although Ballance prays for different remedies, this Court will analyze the claims under the same rubric. Although Ballance appears to allege that the confiscation of the personal property, including the letter,

was unauthorized and not pursuant to any prison policy, WRSP still afforded him sufficient post-deprivation remedies to satisfy Fourteenth Amendment due process concerns. Moreover, under the First and Fourth Amendment, the Prison had a viable security interest in securing each inmate's cell, which Constitutionally overrides Ballance's rights. Thus Ballance's claims fail to establish a genuine issue of fact, and accordingly, the Defendant's Motion for Summary Judgement is granted.

The Supreme Court established that neither the barbed wire nor the cement walls of confinement completely sever an inmate's Constitutional rights. *See Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Although housed behind steel and stone, no "iron curtain" separates an inmate from his "Constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

▓ Prisoners are afforded those rights not "inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Limitations on these rights, however, arise from the realistic demands of prison enforcement and from "valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). The Supreme Court

recognized that the difficulties and complications of prison control as well as issues of separation of powers demand that courts follow a policy of "judicial restraint." *Turner v. Safley*, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

### A. Property Claim

Ballance avers that S.K. Young and J. Fortner intentionally deprived him of his property, and that their decisions found no support under Division Operation Procedures. Ballance avers that Young was "acting on personal prejudice," and that Fortner "stoled [sic] Ballance's legal mail to pertect [sic] his fellow officers." The Supreme Court of the United States established that "an intentional … deprivation of property by a state employee does not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Thus, the threshold question before this Court is whether the state afforded Ballance a meaningful post-deprivation remedy for his loss of the scrapbook, clippings, and the letter from his attorney.[1]

▓ Young and Fortner argue that, pursuant to prison policy, they confiscated Ballance's property and provided him notice of such confiscation. As discussed, in regards to the scrapbooks and clippings, Ballance received notice of the confiscation. Ballance responded by filing a grievance, which was investigated and subsequently dismissed. Moreover, Ballance received a Level I and Level II appeal, which both affirmed the confiscation of property. To protect Ballance's property

---

1. The Defendants' proposition that Ballance may not "press his claim against Defendant Fortner because he failed to exhaust his institutional remedies" is completely unfounded. In *Hall v. McCoy*, this Court dismissed a prisoner's claim for money judgement without prejudice because he failed to exhaust the prison's administrative remedies. 89 F.Supp.2d 742, 748 (2000). However, the prisoner still had the opportunity to exhaust those remedies and re-file suit. In the case at bar, this Court will not allow the thirty-day (30) time limit under DOP 866 to undermine a prisoner's right to seek relief in federal court under the First and Fourth Amendment. To do so would allow a prison regulation to limit all statute of limitations to a mere thirty days.

rights, the prison also offered to mail Ballance's personal property, via United Parcel Service, to a stated address. Ballance provided the address of his "Mom," but the carrier returned the package as undeliverable.

■ Ballance also obtained post-deprivation remedies in relation to the confiscation of the letter that contained hair samples and allegedly, two money orders. Ballance avers in his Complaint that he never received a notice of confiscation for the letter. He did receive, however, notice of a disciplinary hearing and attended the hearing on September 13, 1999. Further, the Hearing Officer's ruling underwent an institutional review on September 15, 1999, which subsequently approved Ballance's penalty. Although Ballance may not file a grievance to the Disciplinary hearing decision, under 866–7.11, Ballance could have filed a grievance for the alleged confiscation of the letter and contents, but failed to do so. Pursuant to DOP 866 7.14, an inmate has the right to file a grievance within thirty (30) days from the date of the incident. Clearly Ballance understood the grievance process as he freely files grievances in regard to a myriad of other subjects.

Subsequent to the confiscation of the scrapbooks, clippings, and letter, the state afforded Ballance sufficient and meaningful avenues of relief. The state has established Division Operating Procedures that allow an inmate to grieve an incident or occurrence. Furthermore, Ballance has available state-law remedies, such as the Virginia Tort Claims Act, that may compensate him for his alleged loss. Accordingly, as Ballance received or had available many "meaningful post-deprivation" remedies, this Court finds that neither Young nor Fortner violated Ballance's due process rights under the Fourteenth Amendment.

### B. First Amendment

Ballance argues that both Defendants violated his First Amendment rights when they confiscated his property and mail. Ballance does not allege a First Amendment right violation resulting from content restriction, yet he alleges the right to view and read both the clippings and mail. Although this Court believes Ballance's First Amendment claim debatable, under a First Amendment analysis, Ballance's claim still fails.

■ An inmate specifically retains those Constitutional rights afforded to him by the First Amendment. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *See also Ross v. Reed*, 719 F.2d 689, 693 (4th Cir.1983). In the prison context, however, an inmate's First Amendment rights must often bow to other valid penological concerns. *See Montcalm Publishing Corp. v. Beck*, 80 F.3d 105, 107 (1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 417–18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). Any regulation of speech, however, must not be any more encompassing than necessary to further the penological interested involved. *See Montcalm Publishing Corp.*, 80 F.3d at 108 (citing *Martinez*, 416 U.S. at 424, 94 S.Ct. 1800). The Supreme Court held that when a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (citing *Jones v. North Carolina Prisoner's Labor Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)).

■ This Court is aware of the special circumstances that arise in the confines of prisons. Not only should this Court allow great deference in the formation of prisons regulations, but more importantly, the judgment of prison officials also demand great weight. To determine whether Defendants violated Ballance's constitutional rights, this Court must first ascertain

whether both Young's and Fortner's confiscation of Ballance's scrapbooks, clippings and letter was "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). This deferential standard of review ensures that " 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' " *Id.* (quoting *Jones,* 433 U.S. at 128, 97 S.Ct. 2532). Courts must give prison officials, like Young and Fortner, great deference in executing policies and using tenured judgment to preserve order and maintain security. *See Bell,* 441 U.S. at 547, 99 S.Ct. 1861 (citations excluded).

■ The Supreme Court established that when a prison official withholds or censors mail, "minimum procedural safeguards" must exist to protect the inmate's Constitutional rights. *See Martinez,* 416 U.S. at 417, 94 S.Ct. 1800. In *Martinez,* the prison restricted certain types of mail that an inmate may receive. Although the case at bar involves the confiscation of mail and other personal property, not specifically the restriction of mail, this Court believes Ballance must also receive procedural safeguards. The Fourth Circuit, following the *Martinez* court, reaffirmed the requirements of notice of confiscation, avenues for protest, and review of the alleged Constitutional violation by someone not involved with the initial decision. *See Montcalm Publishing Corp.,* 80 F.3d at 108 (citing *Martinez,* 416 U.S. at 418–19, 94 S.Ct. 1800).

As discussed above, WRSP afforded Ballance all of these procedural safeguards. Ballance received notice of the scrapbook and clippings confiscation merely six (6) days after the officers took the property during an inventory. Ballance subsequently filed a grievance, which was investigated and determined unfounded. Upon a Level I and Level II review, the determination was upheld. In regards to the confiscation of the letter, Fortner discovered that Ballance sent hair samples to

his attorney though the mail, in violation of DOP 861. In response, Fortner confiscated the letter and its contents. Although Ballance never received a confiscation notice, he was aware of the grievance procedure. Ballance had both the knowledge and accessibility to file a grievance to the alleged unlawful confiscation. As in *Martinez,* WRSP provided Ballance with channels of protest and a neutral review of the alleged violation. Clearly, the administration established set procedures for grievances, and Ballance either utilized these avenues of appeal or understood how to utilize them.

■ Ballance alleges that officials took his scrapbook and clippings out of "personal prejudices and opinions." In fact, quite the opposite appears true. DOP 856, as applied by WRSP officials, does not permit altered pictures or cut-outs, which includes "sections of publications, brochures, newsletters, or items printed from the Internet." WRSP does authorize, however, "individual news clippings, and inmates may receive with a personal letter, a single clipping of an individual newspaper article, such as an obituary or an announcement of a local event." Moreover, WRSP does not allow prisoners to have scrapbooks. Ballance avers that DOP 856 does not specifically prohibit scrapbooks or clippings. Any property that a prisoner receives is subject to review by the prison prior to the inmate's receipt of the property. WRSP does not allow any modified publications, such as "cut-outs ... [that] have been altered from their original state as part of a publication." Further, the prison has also deemed scrapbooks unauthorized at WRSP. The prison's review and subsequent judgement deserves great deference from this Court. *See Wetzel v. Edwards,* 635 F.2d 283, 288 (4th Cir.1980) (citing *Jones v. North Carolina Department of Correction,* 433 U.S. 119, 126, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)).

■ Young and Fortner contend that they confiscated the property pursuant to

DOP 856 and to further security in WRSP. Although Ballance finds such concerns insignificant, this Court strongly supports the importance of institutional security. To further security measures, prisons may often infringe upon an inmate's Constitutional rights. *See Montcalm Publishing v. Beck*, 80 F.3d 105, 108 (1996) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). In the context of an institutional prison, officials must monitor the safety of all prisoners and the prison environment.

Shake-downs of an inmate's cell constitute an effective, but time consuming process to ensure prison security. When a cell is searched, every item must be thoroughly searched and analyzed. Defendants explain that a scrapbook may be used to conceal razor blades or other various contraband. Moreover, a prisoner may utilize the metal parts found in many scrapbooks as potential weapons. Searching an inmate's excess clippings and scrapbooks may present a serious time consuming exercised that limits the staff at WRSP. Ballance argues in his Motion that the prison utilizes an X Ray machine, which will ensure nothing is hidden in the scrapbook. This Court refuses to mandate that WRSP use an X Ray machine every time they search an inmate's cell. To require such extreme measures in securing WRSP serves to place an immense burden on effectiveness of prison security. As the Defendants note, although this argument may appear minuscule in regards to one inmate, prison officials must take the entire prison into consideration. This Court holds that the seasoned decision to confiscate the scrapbook and clippings was reasonable in light of the circumstances and furthered the prison's penological interests of security. *See id.* Therefore, the confiscation of the property did not violate Ballance's First Amendment rights and Young and Fortner are entitled to judgment as a matter of law.

## C. Fourth Amendment

Ballance alleges that Young and Fortner confiscated Ballance's property out of personal prejudices and to protect fellow prison officials. Although unclear from Plaintiff's complaint, it appears Ballance avers that Defendants also violated his Fourth Amendment rights to be free from unreasonable searches and seizures. The Supreme Court of the United States, however, does not afford a prisoner this Fourth Amendment right. *See Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Under the Fourth Amendment of the United States Constitution, a prisoner has no cognizable expectation of privacy in his cell. *See id.* Such a right would run contrary to the penological interests of the prison. *See id.*

The Supreme Court in *Hudson* specifically addressed the possibility of harassment in its decision. Importantly, the Court rejected the Appeals Court analysis and held that prison officials do not have to have reasonable suspicion or an established policy to perform random searches of inmates' cells. *See id.* at 528–29, 104 S.Ct. 3194. The prison official inventoried Ballance's property, pursuant to prison policy, and confiscated the contraband. Fortner confiscated the letter and its contents in response to Ballance's violation of DOP 861, which among other regulations, forbid abuse of the mail. Accordingly, Ballance had no expectation of privacy in his cell, and his Fourth Amendment claim is without merit.

## III. BALLANCE'S MOTION TO COMPEL

Ballance appears to state an additional claim of retaliation in a separate Motion for an Order to Compel. Ballance makes such a motion to compel security to videotape his cell to record what the prison officials allegedly did in response to his filing this lawsuit. Pursuant to the Fourth Circuit's instruction, this Court will analyze a claim of retaliation in the prison context with skepticism. *Cochran v. Mor-*

*ris,* 73 F.3d 1310, 1317 (4th Cir.1996) (*en banc* ) (holding that retaliation claim failed because prisoner alleged insufficient facts to state a claim of retaliatory motive). Such a retaliation claim is addressable under § 1983, but with no cognizable chilling effect on Ballance's constitutional rights, the retaliation claim must fail.

 Although not explicitly addressed in the Constitution, a prisoner may bring a retaliation claim because such actions may tend to chill individuals' exercise of constitutional rights. However, if officials' actions did not chill, impair, or deny plaintiff's right to exercise his constitutional right, the allegations fail to state a retaliation claim cognizable under § 1983. A *de minimis* inconvenience in exercise of the right, caused by defendants' actions, does not constitute a cognizable retaliation claim.

 Ballance correctly states in his Motion that prisoners do enjoy a constitutional right to access to the courts, and that prison officials do not have the power to retaliate against such right. A state prisoner has a constitutional right to meaningful access to the courts, and the state may not abridge, impair, or impermissibly burden the inmate's ability to exercise this right to access. *Hudspeth v. Figgins,* 584 F.2d 1345, 1347 (4th Cir. 1978). However, Ballance must allege sufficient facts to indicate that the alleged retaliation of which he complains resulted in some adversity to him sufficient to warrant concern about a chilling effect on the exercise of his right to access the courts. *American Civ. Liberties Union v. Wicomico County,* 999 F.2d 780, 784 (4th Cir. 1993). Moreover, to sustain a cognizable retaliation claim under § 1983, Ballance must demonstrate that he suffered more than a *de minimis* adverse impact on the exercise of his constitutional rights. *Id.* at 785.

This Court finds that although Ballance pleads a retaliation claim under § 1983, he fails to sufficiently allege more than a *de* *minimis* adverse effect on his constitutional right to access to the courts. Without a sufficient facts to demonstrate a chill on his rights, this Court must summarily dismiss this Motion to Compel, pursuant to 28 U.S.C. § 1915A.

## IV. CONCLUSION

For the foregoing reasons and pursuant to Federal Rule of Civil Procedure 56, S.K. Young's and J. Fortner's Motion for Summary Judgment is granted and Kevin Ballance's Motion for Summary Judgment. Furthermore, pursuant to 28 U.S.C. § 1915A, Ballance's Motion to Compel is denied and dismissed.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

## *ORDER*

In accordance with the written memorandum opinion entered this day, it is hereby

## ADJUDGED AND ORDERED

(1) that Plaintiff's Motion for Summary Judgment shall be and hereby is **DENIED;**

(2) that Plaintiff's Motion for an Order to Compel shall be and hereby is **DENIED;** and

(3) that Defendants' Motion for Summary Judgment shall be and hereby is **GRANTED** to all remaining claims.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to strike this case from the Court's active docket and to send certified copies of this order and the accompanying memorandum opinion to the

plaintiff and to counsel of record for the defendants.